# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

MAUREEN QUINN,

        Plaintiff,

    v.

COUNTY OF MONTEREY,

        Defendant.

Case No.  15-cv-03383-BLF

**ORDER GRANTING MOTION TO DISMISS**

[Re: ECF 11]

Before the Court is Defendant's Motion to Dismiss this *pro se* action for failure to state a cause of action or cognizable legal claim. ECF 11. Defendant argues that Plaintiff's claims are barred by the applicable statute of limitations, fail to set forth the official policy or practice that would give rise to liability under § 1983, and fail to identify the source of Defendant's alleged statutory duties. *Id.* For the reasons stated below, the Court GRANTS Defendant's Motion to Dismiss with leave to amend, as requested by Plaintiff at the hearing.

## I.      BACKGROUND

This *pro se* action arises from Defendant's allegedly biased response to long-running hostility between Plaintiff, an individual residing in Monterey County, and her neighbor, Steve Tankersley, who owns non-adjoining property separated by a 40-acre parcel from Plaintiff's land. Compl., ECF 1-1 ¶ 6. Plaintiff alleges that she purchased her property in 1996. *Id.* Plaintiff alleges that the Tankersleys have engaged in "unlawful harassment, trespass, vandalism, and life-threatening acts" against Plaintiff in an attempt to force her to sell her property. *Id.* Plaintiff states that when she contacted the Monterey Sherriff's Department regarding these allegedly unlawful acts the deputies reacted with "unbridled hostility," treating her with bias, intentionally harming her, and attempting to criminalize her. *Id.* As a result, Plaintiff alleges that Defendant's

employees, while acting in the scope of their employment, violated her rights.[1] *Id.* Plaintiff alleges that the Department treated her this way because certain deputies are friends with the Tankersleys. *Id.*

Plaintiff details ten incidents, beginning in 2004 and continuing through 2015, that she alleges exhibit Defendant's bias against her and give rise to her claims. Plaintiff alleges that on numerous occasions, deputies responded to her reports that she suspected her neighbor of harassment by refusing to properly investigate, often failing to come to Plaintiff's property or to contact her neighbor. *Id.* ¶¶ 7, 11, 13. These include Plaintiff's reports of her neighbor engaging in: trespass and vandalism as evidenced by bullet casings on June 21, 2004; battery by using his motorcycle to hit Plaintiff with dirt and rocks on June 20, 2009; and firing a high-powered rifle at a target he had placed in front of Plaintiff's property on November 17, 2013. *Id.* Similarly, Plaintiff alleges that, on March 8, 2008, after she called 911 upon seeing a bullet strike 50 feet from her vehicle, deputies confirmed that Mr. Tankersley had fired the shot but simply advised him to fire away from the road and filed a report stating that Plaintiff's claim was unsubstantiated. *Id.* ¶ 9.

In addition, Plaintiff alleges that, on January 14, 2008, deputies falsely arrested her on the basis of a report by her neighbor that he had been "shot at." *Id.* ¶ 8. Plaintiff alleges the deputies then fabricated their arrest reports. *Id.* That same month, Plaintiff alleges, a sergeant provided Mr. Tankersley with an internal document of Plaintiff's prior arrest, including her social security and driver's license numbers. *Id.* ¶ 10.

Plaintiff alleges that the deputies again violated her rights in responding to another false

---

[1] Plaintiff includes "Does 1-20" in the caption of her Complaint, refers to "named defendant employees," *id.* ¶ 6, and alleges that "each of the defendants named herein was an agent . . . of the Monterey County Sheriff and . . . was acting within the scope of such agency and employment," *id.* ¶ 3. However, the Complaint names only one defendant—the County of Monterey—and does not name any individual defendants, Doe or otherwise. *See id.* ¶¶ 2-4. The Court notes that "[g]enerally, 'Doe' pleading is improper in federal court. The Federal Rules do not provide for the use of fictitious defendants." *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 918 (N.D. Cal. 2010) (citing *Bogan v. Keene Corp.*, 852 F.2d 1238, 1239 (9th Cir.1988); *Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir.1970); and *McMillan v. Department of the Interior*, 907 F.Supp. 322 (D.Nev.1995)). Thus, if Plaintiff chooses to amend her complaint, she may wish to name individual defendants.

United States District Court
Northern District of California

1    police report, this time by Mr. Tankersley's step-sister, on April 12, 2011. Plaintiff alleges that a

2    deputy screamed at her, stating, "I'm going to find what ever I can to get you arrested." *Id.* ¶ 12.

3    Following this interaction, Plaintiff filed a complaint with the department's internal affairs and the

4    deputy is no longer employed by the department. *Id.*

5           Plaintiff alleges that, on April 13, 2014, another employee admitted to advising Mr.

6    Tankersley that he could videotape Plaintiff while she was on her property, threatened to arrest

7    Plaintiff for stating that the situation was so serious that someone could get killed, and told

8    Plaintiff that she "need[s] to stop calling dispatch because no deputy wants to respond to [her]

9    calls." *Id.* ¶ 15. Plaintiff initiated an internal investigation the next day, which allegedly concluded

10   that Mr. Tankersley's gunfire toward the target was illegal and unsafe and constituted reckless

11   endangerment. *Id.* ¶¶ 15, 16. Plaintiff alleges that, on February 16, 2015, no deputy would take

12   her call to report harassment by Mr. Tankersley.[2] *Id.* ¶ 17.

13          Finally, Plaintiff alleges that in 1961 Monterey County Bureau of Land Management took

14   land that belongs on Plaintiff's property by arbitrarily moving "line monuments" without

15   recording the change or compensating the property owners. *Id.* ¶ 19. Plaintiff alleges that this

16   precludes her from recording a survey of her property. *Id.* According to Plaintiff, her record shows

17   her property as being 37.81 acres, whereas a survey she had done indicates it is 34.4 acres. *Id.*

18          Based on these allegations, Plaintiff claims that 1) "the named Monterey County

19   employees" have violated her Fourteenth Amendment rights, 2) Defendant is liable for these

20   actions under California Government Code § 815.2, 3) Defendant breached its duty under

21   California Government Code § 815.6, and 4) Defendant took Plaintiff's land without just

22   compensation, thereby inversely condemning it and violating 42 U.S.C. § 1983.

23          Plaintiff filed her Complaint in Monterey County Superior Court on June 26, 2015.

24   Defendant removed the case to this Court on July 22, 2015. *See* Notice of Removal, ECF 1. On

25   August 11, 2015, Defendant moved to dismiss the Complaint. Plaintiff opposed on August 25,

26

27   _____

28   [2] The Complaint lists "February 16, 1015." For the purposes of this motion, the Court reads the
     date as "February 16, 2015" and directs Plaintiff to correct this date in any amended pleading.

2015, ECF 13, and Defendant replied on September 1, 2015, ECF 16.[3] The Court heard argument on the Motion to Dismiss on November 19, 2015.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a); see also *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) ("[T]he purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.").

## III.   DISCUSSION

### A.   Section 1983 Claims – Statute of Limitations

Defendant argues that many of the events comprising Plaintiff's § 1983 claims fall outside

---

[3] Defendant requests judicial notice of Exhibits A-D filed in support of its Motion, ECF 11, and Plaintiff requests judicial notice of Exhibits A-D filed in support of her Opposition, ECF 13, 14. Defendant objects to judicial notice of several of Plaintiff's exhibits. ECF 17. Because none of the exhibits provided by either party is relevant to the Court's decision, both requests for judicial notice are DENIED without prejudice as moot.

United States District Court
Northern District of California

1   the statute of limitations.[4] Defendant correctly notes that the law of the state in which an action

2   arises determines the statute of limitations for a section 1983 claim.[5] *See* Mot. at 14. Section 1983

3   "looks to the law of the State in which the cause of action arose . . . for the length of the statute of

4   limitations: It is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S.

5   384, 387. In California, that statute of limitations is two years. *See Maldonado v. Harris* (9th Cir.

6   2004) 370 F.3d 945, 954-55; *see also* Cal. Civ. Proc. Code § 335.1.

7        As a result, Defendant argues, any claim arising from an event that occurred more than two

8   years before June 26, 2015, when Plaintiff filed this Complaint, is time-barred. Mot. at 6. This

9   includes all but the incidents on November 13, 2013, April 13-14, 2014, and February 16, 2015,

10  *see* Compl. ¶¶ 13-17, and would entirely dispose of the inverse condemnation claim, which

11  allegedly arose in 1961—35 years before Plaintiff purchased her property and 54 years before she

12  filed the Complaint. *See* Mot. at 4, 6, 7. Defendants additionally argue that even if the Court were

13  to construe Plaintiff's inverse condemnation claim, which she casts under § 1983, as an inverse

14  condemnation claim under the Fifth Amendment, it would still be barred by the statute of

15  limitations because California provides at most a five-year statute of limitations for inverse

16  condemnation claims. *See* Cal. Code Civ. Pro. §§ 318, 319 (five years if based on the taking of

17  private property); *id.* § 338 (three years if based on trespass or injury to property).

18        Plaintiff argues that, even if the statute of limitation applies, her injuries are "of a

19  continuing nature" and the Court should therefore "compute the time to present a claim from the

20  last event in the series," presumably the date of the last incident she alleges. Opp. at 4. Plaintiff

21  relies on two California cases: *Natural Soda Products Co. v. City of Los Angeles,* 23 Cal. 2d 193

22

---

23  [4] In addition to Plaintiff's fourth cause of action (inverse condemnation), which she pleads as a §
24  1983 claim, the Court also construes Plaintiff's first cause of action (violation of the Fourteenth
    Amendment) as a § 1983 claim. *See* 42 U.S.C. § 1983; *see also Monell v. Dep't of Soc. Servs. of
    City of New York*, 436 U.S. 658, 689-90 (1978).
25  [5] Plaintiff opposes this argument by citing Supreme Court cases that consider various aspects of
    the interplay between state law and federal civil rights actions, such as exhaustion of state
26  remedies before the filing of a federal case and the timing of the accrual of a cause of action. *See*
    Opp. at 4-5. These citations do not challenge Defendant's argument about statute of limitations.
27  To the contrary, the cases Plaintiff cites consistently articulate that the statute of limitations for a
    section 1983 claim is determined by the state statute of limitations for personal injury claims. *See,*
28  *e.g., Felder v. Casey,* 487 U.S. 131, 140, (1988).

United States District Court
Northern District of California

(1943) and *Amador Valley Investors v. City of Livermore*, 43 Cal. App. 3d 483 (1974). Defendant responds that a comparison of the facts of those cases to those here shows that no continuing violation is at issue in this case. Reply at 3-4.[6] The Court agrees with Defendant.

In *Natural Soda,* a business sued the City of Los Angeles for flooding a dried salt-water lake where the business had two soda plants. 23 Cal. 2d at 197. The flooding began on February 6 and continued until the last day of June, 1937; the water did not entirely disappear until September of that year. *Id.* at 202-03. The Supreme Court of California held that the statute of limitations for the claim began to run at the completion of the injury—that is, when the flooding concluded. The court explained that, while "the initial flooding established the inevitability of damages . . . the last flooding contributed to the injury." *Id.* at 203. Thus, requiring the plaintiff to file suit earlier would have had the unacceptable effect of "denying plaintiff the right to recover for much of the injury to his property." *Id.* at 204.

No such concerns are present here because each incident—and related injury—is discrete. Unlike the injury in *Natural Soda*, Plaintiff's alleged injuries can be reasonably divided into separate occurrences that caused her distinct damage, each giving rise to a separate claim.

The facts of *Amador Valley*, decided three decades later, are quite similar to those in *Natural Soda* but its statute of limitations holding actually hurts Plaintiff's argument. In *Amador Valley,* a business sued the City of Livermore for discharging treated sewage water into a creek, making the business' construction considerably more expensive. 43 Cal. App. 3d at 488. The discharge resulted in claims of damage on three separate dates. The court relied on *Bellman v. County of Contra Costa*, 54 Cal. 2d 363, which, in considering a series of earth slippages, held that "a new and separate cause of action arises with each new subsidence, with any applicable limitations statute running separately for each separate subsidence." *Id.* at 489 (quoting *Bellman,* 54 Cal. 2d at 369). In other words, "plaintiff may recover on those items of damage which accrued within the applicable time period." *Id.* Applying that rule, *Amador Valley* found that the business

---

[6] In addition, Defendant argues that Plaintiff has failed to establish how a California doctrine can apply to federal causes of action. Mot. at 4. Because the Court agrees that no continuing violation is at issue here, it need not reach this argument.

timely filed to "cover damages accruing within one year prior to the filing of the claim." If the Court were to apply that rule here, the result would be no different than simply applying the statute of limitations: Plaintiff could not recover for any injury that accrued more than two years before she filed the Complaint on a § 1983 claim, or more than five years on a Fifth Amendment takings claim.

Plaintiff next argues that the delayed discovery rule should bar the application of the statute of limitations to her inverse condemnation claim. Opp. at 6. Under the delayed discovery rule, "accrual is postponed until the plaintiff either discovers or has reason to discover the existence of a claim, i.e., at least has reason to suspect a factual basis for its elements." *Id; see also Nodine v. Shiley Inc.*, 240 F.3d 1149, 1153 (9th Cir. 2001). The "plaintiff must plead and prove the facts showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake." *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991). Plaintiff fails to allege facts establishing any of these elements in her Complaint: while she alleges that she discovered the 1961 act "[d]uring the concurrent lawsuit against the Tankersleys," she does not even list the date of that discovery, much less any facts suggesting that she could not reasonably have discovered the facts at an earlier date. While Plaintiff asserts in her Opposition that the discovery occurred in 2014, *see* Opp. at 6, this does not suffice for the delayed discovery rule because it is not alleged in her Complaint and, furthermore, still does not explain why Plaintiff could not have obtained the knowledge earlier. Thus, Plaintiff's inverse condemnation falls outside of the statute of limitations, regardless of whether that limit is two years or five.

### B.     Inverse Condemnation – Standing

In addition to the statute of limitations problem, Defendant argues that Plaintiff lacks standing to assert the inverse condemnation claim because it is based on a taking that allegedly occurred before Plaintiff owned the property. Mot. at 17. Because Plaintiff's claim is based on a direct condemnation, rather than a regulatory taking, the Court agrees with Defendant.

"In a direct condemnation action, or when a State has physically invaded the property

1    without filing suit . . . it is a general rule of the law of eminent domain that any award goes to the

2    owner at the time of the taking, and that the right to compensation is not passed to a subsequent

3    purchaser." *Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001) (citing *Danforth v. United States*,

4    308 U.S. 271, 284 (1939)). Were Plaintiff's claim based on a regulatory restriction on her land-

5    use, Defendant's argument would fail. *Id.* at 626-27 ("So, the argument goes, by prospective

6    legislation the State can . . . define property rights . . . and subsequent owners cannot claim any

7    injury . . . The State may not put so potent a Hobbesian stick into the Lockean bundle.").

8           Plaintiff's claim is of direct condemnation. She alleges that "[i]n 1961, Monterey County

9    BLM arbitrarily moved the Rancho Pleyto Line monuments whereby taking private land" and that

10   her "property has been taken by Monterey County BLM for public use." Compl., ¶¶ 19, 27.

11   Because she purchased her property after this alleged taking, Plaintiff lacks standing for this claim.

12          In her Opposition, Plaintiff appears to assert an additional incident on which to base her

13   inverse condemnation claim. *See* Opp. at 6 ("County of Monterey violated plaintiff's property

14   rights when [the county surveyor] aided [Tankersley] by allowing [him] to take .91 acres of

15   plaintiff's land by including it in their subdivision survey"). In the Complaint, Plaintiff mentions

16   this same incident but characterizes it as a conversion by the Tankersleys. Compl. ¶ 19 ("they took

17   .91 acres of plaintiff's land by including it in their subdivision survey"). Even if the incident

18   occurred after 1996, when Plaintiff purchased the property, the Court finds that amending to allege

19   involvement by a County employee would be futile because shifting private land to another

20   private property owner does not constitute a government taking of land.[7] Accordingly, the Court

21   GRANTS Defendant's Motion to Dismiss Plaintiff's fourth claim without leave to amend.

22          **C.      Section 1983 Claims – Official Policy, Custom, or Practice**

23

24   ───────────────
     [7] Plaintiff additionally appears to argue that this claim is not ripe because Plaintiff has proposed
25   the recording of a lot-line adjustment, Defendant has not yet considered the proposal, and "the
     state's action is not complete until it provides or refuses to provide suitable postdeprivation
26   remedy." Opp. at 7. However, the case Plaintiff relies on for this proposition, *Parratt v. Taylor*,
     415 U.S. 527 (1981), considers facts so distinguishable from those here (i.e., a prisoner's
27   deprivation of his property as a result of the unauthorized failure of state agents to follow
     established state procedure where there was no contention that it was practicable for the state to
28   provide a predeprivation hearing) that the Court does not reach this issue. Plaintiff has not made
     the relevant allegation, nor has Defendant provided briefing on this question.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant argues that, in addition to the statute of limitations issue, Plaintiff's § 1983

2   claims fail in their entirety because they do not set forth an official policy, custom, or practice that

3   resulted in the alleged deprivation of Plaintiff's constitutional rights. Mot. at 9-10.

4    A municipality cannot be held liable "unless action pursuant to official municipal policy of

5   some nature caused a constitutional tort." *Monell v. Dept. of Social Services of the City of New*

6   *York*, 436 U.S. 658, 691(1978); *see also Huskey v. City of San Jose* 204 F.3d 893, 904 (9th Cir.

7   2000) ("A municipality may be liable under § 1983 only if (1) the plaintiff suffered a deprivation

8   of rights secured to him by the constitution and laws of the United States and (2) the violation

9   occurred pursuant to an official policy or custom.").

10    Defendant argues that Plaintiff alleges no such official policy or custom. Mot. at 9-10.

11   Plaintiff essentially concedes this and responds that Defendant should nevertheless be held liable

12   under § 1983 because its employees were acting under color of state law when they engaged in an

13   indisputable pattern of bias and gross injustice against her. This does nothing to save Plaintiff's §

14   1983 claims, which must set forth an official policy, custom, or practice pursuant to which

15   Defendant deprived Plaintiff of her constitutional rights. *See Monell*, 436 U.S. at 691.

16   Accordingly, the Court GRANTS Defendant's Motion to Dismiss the first claim with leave to

17   amend.

18    **D.    Deprivation of Rights**

19    Because the Court grants Plaintiff leave to amend her first claim, the Court also considers

20   Defendant's last challenge in order to offer Plaintiff maximal guidance in amending. Defendant

21   argues that Plaintiff has failed to allege any deprivation of rights secured by the Constitution or

22   other federal law. Mot. at 10-11. Defendant is correct that, "[a]s a matter of pleading a § 1983

23   action, [a] plaintiff must allege facts establishing a deprivation of rights secured by the

24   Constitution or laws of the United States." *Havas v. Thornton*, 609 F.2d 372, 374 (9th Cir. 1979).

25   Defendant argues that Plaintiff's allegations of unfair treatment or negligent conduct by public

26   officials do not suffice. "[M]erely because the acts are performed by public officials, a state-law

27   tort claim is not thereby transmuted into one for the deprivation of rights secured under the

28   Fourteenth Amendment." *Id.*

1    In her Opposition, Plaintiff appears to respond to this argument in two ways: first, by

2    providing a list of statutes that she asserts Defendant violated. Plaintiff does not specify whether

3    any of these statutes are federal. Opp. at 3. More importantly, Plaintiff failed to allege any

4    violation of these statutes in the Complaint. Accordingly, this response does not overcome

5    Defendant's challenge.

6    Second, Plaintiff appears to argue that her Fourteenth Amendment equal protection claim

7    is premised on the theory that she is a "class of one." Opp. at 9. Plaintiff directs the Court to

8    *Willowbrook v. Olech*, 528 U.S. 562 (2000), in which the plaintiff successfully alleged a "class of

9    one" claim against her village after it required her to grant it a 33-foot easement before connecting

10    her property to the municipal water supply, as compared to the 15 feet required of all other

11    property owners seeking the same access to water. *Id.* at 563. The plaintiff sued the village for

12    violating the Equal Protection Clause of the Fourteenth Amendment by making an "irrational and

13    wholly arbitrary" demand. *Id.* The Supreme Court, reviewing the district court's dismissal for

14    failure to state a claim, held that the plaintiff had sufficiently stated an equal protection claim even

15    though she had not alleged membership in a class or group. *Id.* at 565. Instead, she had pled that

16    she was a "class of one" by alleging that "she has been intentionally treated differently from others

17    similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.

18    Defendant replies that the "class of one" theory does not apply where the state has engaged

19    in discretionary decision-making. Defendant relies on *Enquist v. Oregon Department of*

20    *Agriculture*, which considered a former state employee's "class of one" claim against her former

21    employer for firing her for "arbitrary, vindictive and malicious reasons." 553 U.S. 591, 595

22    (2008).  The Supreme Court held that the "class of one" theory "has no place in the public

23    employment context." *Id.* at 594.

24    In reaching this holding, the Supreme Court explained that "[w]hat seems to have been

25    significant in *Olech* and the cases on which it relied was the existence of a clear standard against

26    which departures, even for a single plaintiff could be readily assessed." *Id.* at 602; *see also*

27    *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336, 341 (1989) (using

28    dated purchase prices to assess property parcels departed from clear standard of using market

10

United States District Court
Northern District of California

value); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445-447 (1923) (assessing one taxpayer's property at 100 percent of its value departed from 55 percent used for all other property).

*Enquist* distinguished such clear-standard cases from those that involve state actions that "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." 553 U.S. at 603. "In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.*

While *Enquist* holds only that the "class-of-one theory of equal protection has no application in the public employment context," 553 U.S. at 607, numerous courts have extended its rationale to other discretionary state actions. In dicta, *Enquist* itself explained that allowing "an equal protection claim [against a traffic officer] on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action." *Id.* at 604. The Eighth Circuit applied *Enquist*'s rationale to police investigative decisions, finding that "[a] police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." *Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir.2009). Defendant asks the Court to reach the same conclusion on the basis of the facts alleged here. While Defendant's argument may ultimately be persuasive, the Court is granting Plaintiff leave to amend her first cause of action and therefore declines to rule on this ground until the Complaint is further developed.

In the alternative, Defendant argues that Plaintiff has failed to plead a "class of one" claim because she has not plausibly asserted that she was treated differently from similarly situated individuals without a rational basis. Mot. at 6. Plaintiff's strongest allegations in this regard appear in paragraph 12, where she alleges that a deputy responded to a call by Mr. Tankersley's step-sister by rushing over to their property to get a report and then immediately coming to Plaintiff to scream at and threaten her. This allegation does not suffice, however, because Plaintiff has not alleged that she and the Tankersleys are similarly situated. Furthermore, one incident where one

1  individual was treated differently than Plaintiff might have been treated had she made the same

2  call and report does not suffice to allege that "she has been intentionally treated differently from

3  others similarly situated and that there is no rational basis for the difference in treatment." *Olech,*

4  528 U.S. at 564.  Accordingly, Plaintiff's first claim also fails for this reason and Plaintiff must

5  address this deficiency in any amended pleading.

6       **E.      State Law Claims**

7       Defendant argues that Plaintiff's second and third causes of action—violations of

8  California Government Code §§ 815.2 and 815.6, respectively—should be dismissed because

9  Plaintiff has not pled that these sections establish any statutory duty, nor do they. Mot. at 13-15.

10      "Since the duty of a governmental agency can only be created by statute or 'enactment,'

11  the statute or 'enactment' claimed to establish the duty must at the very least be identified." *Searcy*

12  *v. Hemet Unified School Dist.*, 177 Cal. App. 3d 792, 802 (1986). Though Plaintiff identifies §§

13  815.2 and 815.6, Defendant argues that this fails the pleading standard because neither statute

14  establishes any duty on the part of Defendant. Mot. at 13-15. The Court turns to the statutory

15  language of §§ 815.2 and 815.6 to evaluate Defendant's argument.

16      Section 815.2 provides,

17      (a) A public entity is liable for injury proximately caused by an act or omission of
        an employee of the public entity within the scope of his employment if the act or
18      omission would, apart from this section, have given rise to a cause of action
        against that employee or his personal representative.
19

20      (b) Except as otherwise provided by statute, a public entity is not liable for an
        injury resulting from an act or omission of an employee of the public entity where
21      the employee is immune from liability.

22  Cal. Gov. Code § 815.2.

23      Similarly, § 815.6 provides

24      Where a public entity is under a mandatory duty imposed by an enactment that is
        designed to protect against the risk of a particular kind of injury, the public entity
25      is liable for an injury of that kind proximately caused by its failure to discharge
        the duty unless the public entity establishes that it exercised reasonable diligence
26      to discharge the duty.

27

28  Cal. Gov. Code § 815.6.

       *United States District Court*
       *Northern District of California*

                        12

Defendant is correct that, though Plaintiff identifies these statutes, she has nevertheless failed to identify the source of any duty on Defendant's part. Neither section creates a duty; instead, both rely on the existence of a duty arising from a separate source. *See* § 815.2 ("apart from this section"); § 815.6 ("a mandatory duty imposed by an enactment").  Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's second and third causes of action with leave to amend.

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED, with leave to amend. Any amended complaint shall be filed **on or before February 29, 2016.**

Dated: January 28, 2016

BETH LABSON FREEMAN
United States District Judge