UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAUREEN QUINN,<br>　　Plaintiff,<br>　v.<br>COUNTY OF MONTEREY, et al.,<br>　　Defendants. | Case No. 15-cv-03383-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>[Re: ECF 49, 51] |

Plaintiff Maureen Quinn brings this action *pro se* to challenge the allegedly biased response of Monterey County deputies to a long-running dispute between Plaintiff and her neighbor. The Court previously dismissed Plaintiff's § 1983 claim against the County in a reasoned order, but Plaintiff has amended her pleadings to add new claims and introduce new Defendants, including individual County employees and her neighbor's family member who resides in Idaho. Defendants argue that Plaintiff's amended complaint still fails to state a claim and that further amendment would be futile. Defendants therefore ask the Court to dismiss the case with prejudice. For the reasons stated below, the Court GRANTS Defendants' motions.

**I.     BACKGROUND**

Plaintiff alleges the following. Plaintiff has owned property in Monterey County since 1996 and she began building her home and agriculture business there in 2000. FAC ¶ 6. Plaintiff brings this action against seven defendants: Thomas Tankersley, who resides in Idaho but has owned the parcel of land abutting Plaintiff's property to the north since 2006; the County of Monterey; and six County employees: Steve Bernal, Jason Sclimenti, John Burdick, Lloyd Foster, and Nick Kennedy ("Individual County Defendants"). *Id.* ¶¶ 6, 7. Because many of Plaintiff's allegations also concern non-party Steve Tankersley, the Court refers to Defendant Thomas

Tankersley as "Tankersley" and Steve Tankersley as "Steve."

This dispute arises largely from harassment Plaintiff has allegedly faced from Steve, often emanating from Tankersley's property, and the County and its employees' alleged failure to sufficiently respond. Plaintiff alleges that the Individual County Defendants have a powerful alliance with and bias in favor of Steve. *Id.* ¶ 24. Specifically, Bernal, who is now Sheriff of Monterey County, is personal friends with the Tankersley family, who were among the primary financial contributors to Bernal's campaign for Sheriff. *Id.* ¶ 29. Meanwhile, other defendants, including Foster, have an interest in protecting the Tankersleys in order to stay in good favor with now-Sheriff Bernal. *Id.* ¶ 33.

Plaintiff alleges that Tankersley's parcel of land is vacant and undeveloped, but that other members of the Tankersley family own parcels to the north and west of Tankersley's land and have installed a private easement road along his parcel to access their property. *Id.* ¶¶ 7, 8; *see also* Exh. 1 to FAC. The road is 45 feet from Plaintiff's property. *Id.* ¶ 9.

Steve uses the private easement road to harass and threaten Plaintiff in an attempt to get Plaintiff's property for himself. *Id.* ¶¶ 10-11. The harassment has taken the form of speeding by in trucks, ATVs, and motorcycles; spinning the tires to kick up dirt and rocks at Plaintiff; and directing high-beam car lights at her residence and revving his engine at night. *Id.* ¶ 12. Plaintiff has alerted Tankersley of the nuisance on two occasions: first, through an attorney in June 2008 and second, on an unspecified date, by mailing him 2008 court mediation orders. *Id.* ¶¶ 13, 25.

In early 2013, Steve and a friend began to fly in a helicopter less than 100 feet above Plaintiff's property, at times with a video camera or a rifle sticking out. *Id.* ¶ 16. After Steve and his friend ignored an FAA investigator's warnings, the FAA investigator advised Plaintiff to contact local law enforcement. *Id.* ¶¶ 17, 18. Plaintiff did so, but her calls resulted in grossly subjective reports, biased in favor of Steve and his friend. *Id.* ¶ 18. Plaintiff then sued Steve's friend in state court. *Id.* ¶ 19.

After the helicopter incident, Steve escalated his harassment because he knew he had the support of the Monterey County deputies. *Id.* ¶ 20. Steve placed a metal target on Tankersley's property, in front of Plaintiff's home, and began firing high-powered rifles at the target. *Id.* ¶ 20.

On November 17, 2013, Plaintiff heard a shot originating from Steve's property and then saw a bullet strike the ground less than 100 feet from where she was standing. *Id.* ¶ 21. Plaintiff called the Monterey County Sheriff's department. Sclimenti and Foster responded but fabricated material facts in their report and did not require Steve to comply with state laws and NRA regulations regarding his target. *Id.* ¶ 21.

Plaintiff alleges that this contrasted sharply with the treatment she received for a pistol target she had installed on her property in June 2008. After Steve contacted the Monterey County Sherriff's Department, deputies arrived on Plaintiff's property and concluded that her target complied with NRA regulations, but asked her to adjust the draw angle for optimum safety. *Id.* ¶ 15.

In an evening on or about December 2013, Plaintiff was shaken out of her chair by an explosion. She called 911 to report that a bomb had exploded on Steve's property. Kennedy and other officers arrived at Plaintiff's home in about 30 minutes. *Id.* ¶ 22. Kennedy refused to go investigate on Steve's property because of the late hour. *Id.* ¶ 24.

Four months later, on April 6, 2014, Plaintiff was walking back from firing at her target when Steve began to fire rifles at the target on Tankersley's property and in her direction. Steve then drove to Plaintiff's house, stopped on the private easement road 50 feet from Plaintiff's house, and fired five rounds in rapid succession. *Id.* ¶ 26. Plaintiff called 911 and Bernal and Burdick came to investigate. *Id.* ¶¶ 26-27. Plaintiff again complained that the target on Tankersley's property was not compliant with the law. Bernal and Burdick told her to install a surveillance camera. *Id.* ¶ 27.

The next day, Sergeant Irons directed Bernal and Burdick to return to investigate further, and Plaintiff showed them where Steve had been standing when he fired. Nevertheless, Bernal and Burdick did not require Steve to bring his target into compliance with state law and NRA regulations. This enabled Steve to continue endangering Plaintiff's life with target practice. *Id.* ¶ 28.

Plaintiff alleges that Bernal told Steve that Plaintiff was going to install security cameras even though she had made clear that she did not intend to do so. *Id.* ¶ 29. This enraged Steve who

3

spent the next week driving to Plaintiff's home every day to video tape her and fired at his target in the direction of Plaintiff's home all day. *Id.* ¶ 29.

On April 13, 2014, Plaintiff called dispatch to speak with Bernal about this and he admitted to telling Steve that she was going to install cameras. Plaintiff told Bernal, "[T]he situation out here is so serious someone is going to be hurt or killed." Bernal cut her off and shouted, "[Y]ou just threatened his life, I could arrest you. I could come right out there now and arrest you. You need to stop calling dispatch because no deputy wants to respond to your calls." *Id.* ¶ 29.

The next day, on April 14, 2014, Plaintiff called the Sheriff's Internal Affairs Department and the Deputy District Attorney. *Id.* ¶ 30. On April 24, 2014, Sergeant Irons and Commander Sanders of the County conducted an investigation at the District Attorney's Office's request. The investigation concluded that the gunfire toward the metal target was illegal and dangerous. The District Attorney's Office, Sergeant Irons, and Commander Sanders admonished Steve. *Id.* ¶ 31.

After the investigation was released on October 1, 2014, Plaintiff filed for a temporary restraining order ("TRO") and initiated a lawsuit in state court against Steve. *Id.* ¶ 32. On December 3, 2014, Steve violated the TRO by driving along the easement as a passenger.

Plaintiff called dispatch to report this TRO violation. Foster responded and was hostile to Plaintiff. Foster refused to come out, asserting that there was no active TRO against Steve and that, even if there were, it would not prevent Steve from accessing the easement. Foster defied his duty to enforce the TRO, stating that it had expired, and lied by stating that Plaintiff had a TRO against her. *Id.* ¶ 33. On February 15, 2015, Plaintiff called dispatch and Foster refused to take her call. *Id.* ¶ 34.

On the basis of these allegations, Plaintiff brings the following claims: (1) 42 U.S.C. § 1983 claim for violation of her Fourteenth Amendment rights to due process and equal protection against all Defendants except Tankersley; (2) gross negligence against all Defendants; (3) nuisance against Tankersley; (4) intentional infliction of emotional distress against the County and Bernal; (5) and defamation of character against the County and Foster.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### III. DISCUSSION

#### A. § 1983 Claim

The County and Individual County Defendants (collectively, "County Defendants") first challenge Plaintiff's § 1983 claim against the County for failing to set forth an official policy, custom, or practice that resulted in the alleged deprivation of Plaintiff's constitutional rights.[1] Plaintiff previously asserted a § 1983 claim against the County, which the Court dismissed for this precise pleading deficiency. Plaintiff responds that her claim should survive because she has clearly stated that Defendants violated official policy, custom, and practice to cause her harm. Opp. at 3, ECF 59.

As the Court explained in its previous dismissal order, this response misreads the law because "[a] municipality may be liable under §1983 only if (1) the plaintiff suffered a deprivation of rights secured to him by the constitution and laws of the United States and (2) the violation occurred *pursuant to* an official policy or custom." *Huskey v. City of San Jose,* 2014 F. 3d 893, 904 (9th Cir. 2000); *see also Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). As County Defendants correctly argue and Plaintiff conceded at the hearing, Plaintiff has no problem with the County's official policy; instead, she takes issue with the Individual County Defendants' alleged violation of it. This concession shows that any amendment

---

[1] County Defendants filed a Request for Judicial Notice ("RJN") of two exhibits, both of which are court records. *See* Mot. at 3. Because they are not subject to reasonable dispute, *see Bovarie v. Giurbino*, 421 F. Supp. 2d 1309, 1313 (S.D. Cal. 2006) (citing *U.S v. Author Svcs., 22 Inc.*, 804 F.2d 1520, 1522 (9th Cir. 1986)), the Court GRANTS County Defendants' RJN of Exhibits A-B.

of the § 1983 claim against the County would be futile.

The County Defendants next argue that Plaintiff's § 1983 claim against the Individual County Defendants should fail because Plaintiff does not allege that she was deprived of rights secured by the Constitution or other federal law. County Defendants contend that some nebulous sense of unfair treatment or even failure to protect members of the public against harm inflicted by third parties is not enough to give rise to § 1983 liability. County Defendants argue against the equal protection and due process portions of Plaintiff's claim separately.

County Defendants argue that Plaintiff's due process claim is analogous to, though far more innocuous than, the § 1983 due process claim asserted in *Balistreri v. Pacifica Police Department*, 901 F. 2d 696 (9th Cir. 1988). In *Balistreri*, the plaintiff brought a § 1983 suit to challenge Pacifica police officers for how they responded after her husband harassed her over the course of four years. His harassment included severely beating her, vandalizing her property, and throwing a firebomb outside of her window. *Id.* at 698. The plaintiff alleged that officers responded by telling her she deserved the beating, failing to offer her medical assistance, receiving her complaints with ridicule, denying that any restraining order was on file when she called to enforce it, telling her to move elsewhere, and hanging up on her in the middle of her call to report vandalism. On that basis, she brought due process and equal protection claims.

The district court dismissed her case and the Ninth Circuit affirmed dismissal of the due process claim, explaining that "[t]here is, in general, no constitutional duty of state officials to protect members of the public at large from crime." *Id.* at 699-700 (citing *Martinez v. California*, 444 U.S. 277, 284-85 (1980)). The Ninth Circuit noted that "such a duty may arise by virtue of a 'special relationship' between state officials and a particular member of the public" if, for example, "the state created or assumed a custodial relationship toward the plaintiff . . . affirmatively placed the plaintiff in a position of danger . . . was aware of a specific risk of harm to the plaintiff[ ] or . . . affirmatively committed itself to the protection of the plaintiff." *Id.* at 700. However, the Ninth Circuit found no such relationship in *Balisteri*.

County Defendants argue that Plaintiff's allegations echo those in *Balisteri*, except that both the alleged violence by a member of the public and the officers' alleged hostility is

6

substantially less egregious. Plaintiff responds that this case is unlike *Balisteri* because, here, the Individual County Defendants had a specific motive for their alleged misconduct. Opp. at 8.

The Court agrees with County Defendants. Because there is "in general[ ] no constitutional duty of state officials to protect members of the public at large from crime" and Plaintiff has not asserted any "special relationship" that might give rise to such a duty in this case, Plaintiff has failed to state a § 1983 claim based on a due process violation. Any amendment to attempt to cure this defect would be futile.

County Defendants next attack Plaintiff's § 1983 claim based on an equal protection violation because she has failed to allege that she was deprived of law enforcement's protection due to her membership in a protected class. Plaintiff does not disagree, but argues that she has alleged a viable "class of one" equal protection claim. The Court considered this theory in its First Dismissal Order and, though it dismissed on other grounds, the Court noted that "Defendant's argument may ultimately be persuasive." First Dismissal Order at 11. The Court now squarely addresses the issue.

Both parties offer *Willowbrook v. Olech*, 528 U.S. 562 (2000) as the leading "class of one" case. In *Olech*, the plaintiff successfully alleged a "class of one" claim against her village after it required that she provide it with a 33-foot easement before it would connect her property to the municipal water supply, as compared to the 15 feet it required of all other property owners. *Id.* at 563. The plaintiff sued the village for violating the Equal Protection Clause of the Fourteenth Amendment by making an "irrational and wholly arbitrary" demand. *Id.* The Supreme Court held that the plaintiff had sufficiently stated an equal protection claim even though she had not alleged membership in a class or group. *Id.* at 565. Instead, she had pled that she was a "class of one" by alleging that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.

Plaintiff argues that *Olech* governs here because she was intentionally treated differently than Steve Tankersley without any rational basis. Opp. at 6-7. Defendant replies that the "class of one" theory cannot apply in a context like police investigations, where the state has engaged in discretionary decision-making. Mot. at 11-12.

Defendant relies on *Enquist v. Oregon Department of Agriculture*, which considered a former state employee's "class of one" claim against a former employer for firing her for "arbitrary, vindictive and malicious reasons." 553 U.S. 591, 595 (2008). The Supreme Court held that the "class of one" theory "has no place in the public employment context." *Id.* at 594.

In reaching this holding, the Supreme Court explained that "[w]hat seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff could be readily assessed." *Id.* at 602; *see also Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336, 341 (1989) (using dated purchase prices to assess property parcels departed from clear standard of using market value); *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445-447 (1923) (assessing one taxpayer's property at 100 percent of its value departed from 55 percent used for all other property). *Enquist* distinguished such clear-standard cases from cases that involve state actions that "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." 553 U.S. at 603. "In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.*

Numerous courts have extended its rationale to other discretionary state actions. The Eighth Circuit applied *Enquist*'s rationale to police investigative decisions, finding that "[a] police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." *Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir.2009). In dicta, *Enquist* itself explained that allowing "an equal protection claim [against a traffic officer] on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action." 553 U.S. at 604. Defendants asks the Court to reach the same conclusion here.

The Court must agree with Defendants. In a context that involves as much discretion as police investigation, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like

8

individuals differently is an accepted consequence of the discretion granted." *Enquist,* 553 U.S. at 603. While the Court would be troubled by such an outcome in a situation where one member of a community is left without recourse against all others, including officers, who have chosen to ostracize her, County Defendants highlighted at the hearing on this motion that Plaintiff received recourse through her outreach to the Sheriff's Internal Affairs Department and the Deputy District Attorney. Accordingly, the Court GRANTS County Defendants' Motion to Dismiss the § 1983 claim. Because the Court finds that amendment would be futile, the dismissal is with prejudice.

### B. State Claims

The Court has now dismissed all of Plaintiffs' federal claims, leaving it with the question of whether or not to exercise supplemental jurisdiction over Plaintiffs' state law claims. A district court has discretion to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Thorn v. BAE Systems Hawaii Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1225 (D. Haw. 2008) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). The Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

Here, the Court finds that maintaining jurisdiction would require the Court to interpret state law, a task for which a state court is better suited, and would encourage forum shopping. Accordingly, the Court GRANTS County Defendants' Motion to Dismiss.[2]

Dated: August 8, 2016

_____
BETH LABSON FREEMAN
United States District Judge

---

[2] Having declined to exercise jurisdiction over Plaintiff's state law claims, the Court DENIES Tankersley's Motion to Strike as moot.